The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court, may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's case will be called, as previously announced, the Times is allotted to counsel. The case today is Common Cause Rhode Island et al. versus the Rhode Island Republican Party et al. Appeal number 20-1753. Good afternoon, Counsel Norris. You may proceed. I might as well tell you that I have a question that I would like to have cleared, because I'm not sure I understand correctly. What is the injury, in fact, that you would suffer by not granting the state that you were requesting? As you know, this is a jurisdictional question. That's why I asked you off the bat. Yes, thank you, Your Honor. Can I just say at the outset, if I could reserve five minutes for rebuttal? Yes, you may. Okay. Thank you, Your Honor. Our injury, Your Honor, is several folds. It's the same injury we've alleged in the other dozen cases, COVID-19 cases, we've intervened in this year. It's several folds. We represent several candidates and voters and, of course, ourselves in upcoming elections. And we're inherently interested in the rules that govern those elections. And when they're changed in the last minute, like these have been, the parties spend more resources organizing and informing and reacting and, you know, helping their voters navigate those changes. Why wasn't that a concern to you in June when the primary was changed? Thank you, Your Honor. In June, the governor, acting under her emergency powers, changed. And that doesn't mean you could not have filed suit in June to make the same arguments then that you're making now. Do you have your voters accustomed at this point to voting by email? I mean, excuse me, voting by mail without the requirement of signatures and a notary? Your Honor, perhaps we could have filed suit. The questions would have been much different, would have been about the governor's emergency authority and not the authority of... That doesn't mean the harm is different. The harm you just articulated is the same. Your Honor, I don't think anyone has an interest in more lawsuits, more litigation when it's not necessary. Why wasn't it necessary if the harm is the same? Why is the harm different now than it was then? I think one important distinction, Your Honor, is in June, when we're talking about the presidential primary, Rhode Island had already moved the date of that primary to a later date in June. And by that point, the primary was not competitive. Both parties had selected their nominees. In essence, unlike a general election or even contested state primaries, the risks that we're concerned about, fraud and last minute changes in the rules, are just not as present in completely non-competitive elections. And with that, Your Honor, I guess I'll return sort of to the gateway question here in this case, whether we should be allowed to intervene to make these arguments in the first place. And as I mentioned... The gateway question was the harm. Were you finished? I am, unless there are further questions. But just to be clear, what you've stated is what you allege is the degree of your harm. Yes, Your Honor. There's a good opinion on this out of California. I believe the Eastern District, Issa v. Newsom, says political parties routinely intervene in cases involving the election rules. And no one thinks that's very controversial because they obviously have interest in the rules that govern the candidates up for election, the rules that govern the voters, and the rules that they have to react to and spend resources on. And it's an intervention that is routinely granted, both to the Republican Party and the Democratic Party. So that being said, on intervention, Your Honor, as I've mentioned, we have intervened successfully in over a dozen COVID-19 election cases this year. And I'll say out of all of these cases so far, this has been easily our strongest case for intervention. I read carefully my friend's briefs on this question, and I don't believe they cite a single authority that has denied intervention in similar circumstances, either on timeliness or on adequacy of representation, the two grounds that the district court relied on. You were granted a fairness hearing, were you not? Correct. Now, what would have been your participation in this case, in addition to what you did in the fairness hearing, had you been granted intervention? So two things, Your Honor. I think first and most obviously, without being a party to this appeal, we cannot appeal the consent decree. So that is a big difference to us. Well, I know, but you're here basically appealing it right now, even though you say you apparently don't think very much of the intervention hearing. Your Honor, we're here on both the merits and intervention because of the time constraints here in this case. We filed a protective notice of appeal from the stay. But technically, we do need intervention to be parties and to litigate this appeal. The district court needn't be the last word on the legality of this important consent decree. I'm sorry, but maybe I'm not being clear. I do not understand what you would have done, in addition to what you did at the fairness hearing, had you been granted formal intervention? Because I don't really see that much difference at this point between what you did at that hearing and what you're doing today, had you had an intervention standing. Sure, Your Honor. I'll limit the appeal question and talk just about the district court. The proceedings and the process we got in the district court was extremely truncated. The district court granted our motion to hold a fairness hearing, and I believe she would have held one anyway because she has to approve a consent decree. But the next day, the fairness hearing was held. There was no opportunity to collect or present evidence, which is one of the concerns, I believe, in the Edwards case we cited in our brief as to why this argument that your mere participation as an amicus, essentially, in the fairness hearing does not deny your right to intervene or your need to intervene. Could you be more specific as to what evidence you would have presented, for example, as to fraud? Yes, Your Honor. Mr. Norris, let me see if I can clarify this some. I did not read your brief as saying that we should reverse or vacate the judgment below on the grounds that you should have been allowed to intervene. I read your brief as saying you should have been allowed to intervene, and we should say that now so that you can appeal and participate going forward. Correct. And we believe that's sufficient to grant us intervention now. I was trying to address Judge Torea's question as to what would have happened in the district court, and I believe there would have been differences. Your Honor, we weren't truly even invited to file a brief in the district court. We filed one anyway, hoping the judge would read it, and she gave it consideration. But the process was truncated. But as Judge Kayada mentions, it's good enough that we need to be able to move forward as parties and take a disappeal. And so on the merits of that intervention question, the district court may not— Are you saying that you want intervention status so that you can further appeal in the event we issue an adverse ruling? Your Honor, technically, I don't believe you can issue a ruling until you've granted our intervention. Otherwise, there would be no parties before you. So we believe it's a threshold question. And then, yes, it is important to us if we do not prevail in convincing you to enter a stay that we be formally recognized as parties going forward so that we can take further action if necessary. Or you could provisionally appeal to the Supreme Court if we don't? Technically, we still probably could. We would make sort of the same process argument we're making now where we, like you said, provisionally appeal and then ask the Supreme Court to grant us intervention and then hear our stay motion. I believe we'd be in the same posture. But I don't believe the parties are truly defending the merits of the district court's intervention decision. And I believe it's before this court now. And I will say from experience in the Wisconsin litigation in the Seventh Circuit, we were granted intervention, but the legislature was denied intervention, even though the state stopped defending the laws in question. And the Seventh Circuit made a point to grant intervention before it granted, in part, the stay in an extremely similar posture and, in fact, involving the exact same type of law, a witness requirement on absentee balloting. And that case culminated in- So you don't want us to think about what you would have done or consider what you might have done had you been formally granted intervention status at the district court. I'm getting back to Judge DeWaye's question. Five minutes remaining. Your Honor, we don't need to consider that question because our right to appeal is important enough to us. But it would have been different. We would have had a briefing schedule. We potentially would have had time to collect and present evidence. Instead of- I speak from personal experience. Instead of staying up all night to write a brief conjecting to the consent decree that was going to be heard the next day- Have you collected any evidence now over the past few days? Your Honor, we're not trying to expand the record on appeal. We believe that we have enough to prove that the consent decree is unlawful now. I'm not sure that- Why is it unlawful? Why don't you tell us why you think it's unlawful? Absolutely. So we all agree here that to suspend a state law by consent decree, the state law must be likely unconstitutional under the federal constitution. Otherwise, there's no authority to enter a consent decree. And we also all agree on the test for answering that question, which is called the Anderson Burdick balancing test based on two Supreme Court decisions called Anderson and Burdick. And that test essentially has courts weigh the burden that a law imposes on voting rights against the state's interests in having that law. And when the burdens are small and the law is reasonable and neutral, the state almost always wins. And so- Isn't it correct that the attorney general had input into these proceedings? Your Honor, I'm not sure what you mean by input. I believe all the state parties here are represented by private counsel. The brief says that an assistant attorney general was present in the courtroom for the fairness hearing and was consulted throughout the consent decree process. And in Rhode Island, when there's a challenge to the constitutionality of a state law, the I'm sure you know. And in fact, he was given notice and he sent a representative to participate. Someone, I assume, who was considering whether the consent decree should have been entered. So it seems fair to assume that the representative from the state of Rhode Island, the elected representative, made a determination that as applied during the COVID crisis, that this consent decree was not beyond the law. Your Honor, I'll stipulate that the attorney general believes this consent decree is lawful. I have no reason to think otherwise. I just don't think it's very important. The consent decrees are judgments of the court. They are injunctions issued by the district court. So while you were alleged collusion in the preparation of this decree. And one of your allegations is that the secretary of state colluded with the parties, although the district court found there was no evidence of that. That's one reason I bring up the attorney general, because I assume you are accusing him of collusion also. Your Honor, we've never accused anyone of collusion in this case. I don't believe that was a mischaracterization of our position. I'm afraid your brief. Respectfully, Your Honor, I don't believe our brief alleges collusion either. It alleges that these parties quickly agreed to a consent decree that we believe is unlawful. There's really two potential problems with consent decrees. You sort of have a procedural aspect where you can argue collusion and it wasn't a fair deal and there wasn't arm's length negotiation. There's also a substantive aspect where the consent decree itself has to rest on a likely violation of the Constitution. And we're talking, we're raising substantive objections in this motion. We're no longer arguing about the bargaining process that occurred and whether that was sufficient or not. To enter this consent decree, there must be a finding that the witness requirement likely violates the Constitution. And with all due respect to the Attorney General, whose views we can all take into account, that the courts have to make that call. It is a question of law that's decided de novo, much like a preliminary injunction. And we have good reason to think that this type of thing is not illegal because the U.S. Supreme Court stayed an injunction of an identical law in Alabama just a few weeks ago. That's time. Thank you. Thank you. Did you reserve some time? Judge, he did. He reserved five minutes. Can I just ask him a question? The Alabama case, it was state officials who were protesting. There are no state officials involved in this case who were protesting the consent decree. That's correct, Your Honor. I would note, though, that the legislature and governor, notably, decided not to suspend the witness requirement for these two elections. And they didn't move to intervene in this litigation to contest, as you are. Correct, Your Honor. We faced this issue recently in Minnesota in the 8th Circuit. There's a case called Pavick v. Simon. In the 8th Circuit, in entering a stay in our favor, rightly noted that election laws are passed by the people's elected representatives, and they affect voters. Those voters are our members, and they affect us deeply and our candidates. And we're here defending the law that is on the books currently. That is why the parties had to get a consent decree. It's because the legislature does not agree, has not overturned that law for these elections. Mr. Morris, are you aware of any case, in particular, any of the Purcell-based cases where the state itself was not in any way complaining about the injunction that it would create problems for the state of any type, or the timing of the injunction? Let me answer that in two parts, Your Honor. First, in the Wisconsin case, we, the Republican Party, were the only ones appealing initially, and the state had not defended the law, and the court entered a stay on Purcell grounds and on Merrick's grounds. In the Minnesota case I just mentioned, Pavick v. Simon, the Republican Party were the only parties defending the state law. The Attorney General did not appeal and was not there, and we received a stay there as well. Now, I think your question had a consent decree element baked into it, and I will say we do not know of a case where Purcell was invoked in the consent decree context. We also know of no case where Purcell was distinguished or denied because it was a consent decree. And as Your Honor phrased it in the question, consent decree is sort of beside the point. The judge's decision is an injunction. It grants injunctive relief with the force of the authority of the court, where if anyone were to violate it, it would be held in contempt. It is an injunction. That's true, but I think you would agree that to the extent there is an interest of the state qua the state in having or not having changes in its election procedures, then there would be a difference between a case in which the state agreed to the procedures specifically and a case in which the state opposed them. Theoretically, Your Honor, I will say the 8th Circuit took this on pretty squarely in PABIC and said the voters and the people have an interest in defending election laws that are valid and on the books also. Now, to the extent Purcell turns on injuries to the state itself and the state election officials, and they're not here alleging those injuries, maybe that's something that you would take into account. But I would say it should be given little to no weight because the legislature's law that it decided not to repeal here has been suspended. And whatever state interests underlie that law, which we think there are several... Judge, how did you want to proceed? I think Judge Kayada was in the process of asking some questions. I guess you had mentioned the Wisconsin case. I had thought that the 7th Circuit let the state legislature intervene in that case, and they opposed the order in the court below. That's true, Your Honor. I'll say I don't believe we should be subject to any sort of inference that the legislature is not present here. There were four total days to intervene in this case. It was a very short window. I'm not sure what the legislature's position is, but I am sure that their law is still on the books, and voters and political parties and candidates have an interest in seeing it enforced. And to the extent that affects Purcell, if you actually read the Purcell decision, it's all about injuries to voters and confusion to voters and distrust of the process and loss of the integrity of the election. It really doesn't have a lot in there about burdens on the state, even though we all agree burdens on the state is a relevant consideration. And could you explain how, take your typical voter, let's start with one who voted in the presidential primary. If the injunction is left in place, the consent decree injunction, how will that person be confused or surprised? Your Honor, I believe Purcell is sort of a legal presumption that... I won't get to that, but let me ask you about, if you could direct yourself to something concrete here, how will that person be surprised? It seems to me they won't because either the last ballot they saw didn't have a witness requirement, or even if they were expecting one when they opened one up and saw they didn't have to do it, they've got no reliance interests or problems at stake. I could imagine if you went in the other direction, so if people were expecting no witness requirements, then at the last moment found out they have them, they could be pretty unhappy. Thank you, Your Honor. I'll flip it around a little bit and say there's no evidence that voters expect to see a witness requirement removed from their ballot because it was removed in June. This law has been on the books for 30 years. So for 30 years since President Clinton, his first election, voters have seen this appear on their envelopes and their ballots that have been expected to comply with it. June, they were told after the presidential primary was moved several months, it was already an unexpected different type of election. They were told that that was good for that one election only, and then the state had a very public debate among the governor and the secretary and the legislature about whether to take that action again, and they concluded no. So I believe voters have all that information in front of them. And if you're thinking about this concretely, this election, if this consent decree goes forward, the envelopes are going to look completely different. There is an optional information section that's been added under this consent decree asking for people's address and date of birth and driver's license number, I believe. I'm not sure all the details, but there's four pieces of information that are requested for the first time, and it's called optional, but you wouldn't see that in the place where the witness requirement used to be and think it was very optional. I believe it will be somewhat confusing. As I started my answer before, I believe Purcell is a legal principle, and I think it's a smart one in that when courts are intervening in elections at the last minute, they're telling voters that the state has done something unlawful and unconstitutional and had to be corrected, which when that's not true or when it's too soon, there's a real loss of integrity and public confidence in the election, and then voters start to wonder about the integrity of the election and the integrity of their vote, and not to mention the practical confusions and just the notion of really the heart of Purcell is that federal courts ought not to be intervening in state elections at the last minute and that plaintiffs ought to be bringing these challenges much sooner, not after they've lost a legislative debate. Yeah, one last question, if I might. If we were to grant the stay that you request, how physically would the state bring off this election, the primary one in September, without considerable delay and confusion, given where we are now, rightly or wrongly? Thank you, Your Honor. I would start by saying it's in this court's power to grant a partial stay for just the November portion of the consent decree, not the September portion, but we have moved for both and we believe we're entitled to it for September. The August 10th date is the date that the state gave for when they will start mailing ballots. That's why we chose that date and asked this court to rule before then to minimize disruptions to the state, but I want to be clear, August 10th is not a date set in stone by law. It is a date where the state has determined it really ought to start sending out ballots because the last day to request a ballot is August 18th. So they are backing up about a week and want to start mailing and that's great. I'll say that the state has represented that they have 60,000 of the correct envelopes on hand that they can use pre-printed. It's not enough, Your Honor, but it's a good start. How do they determine who gets the first 60,000 and why doesn't that in and of itself discriminate against the other 500,000? Well, Your Honor, they always have to determine who gets the first 60,000 no matter who does the printing. I'm not sure the process the state uses for that, but I doubt it's discriminatory. The state can fill us in on those details, but the 60,000 just gets them started and then I believe expedited printing is possible and available and all of those ballots can be mailed out in time to be returned. And I guess I make one more legal argument too, which is- I'm sorry, if they dispute that, then what? I would just have this court notice that it's not a legal deadline, it's a dispute over when ballots should be mailed out a month in advance of the election. It's a calculus of reasonable time voters would need in order to complete and return their application. Yes, Your Honor, I believe that is what's happening. But I do think with expedited printing in a surplus of 60,000 ballots to get them going, that as long as this court rules before August 10th, they will not even miss the August 10th deadline or perhaps we'll miss it by a day. But just my main point, which is- Do you agree that the ballots without the notary and signatures have already been printed? For the September primary, I have no reason to doubt that the printing started. I believe the affidavit says that before the consent decree was approved, the secretary told the printer to start printing the ballots that would comply with the consent decree, but not state law. But as I mentioned, the 60,000 are ready to go. They already exist. I believe with expedition, the rest of them could be printed with perhaps no delay, but with only a couple of days delay. And more importantly, if this were a preliminary injunction from a district court, we wouldn't be having this conversation because under Purcell, there is no reverse Purcell principle that stops an appellate court from stopping a judicial intrusion at the last minute. Mr. Norris, if we weren't in the middle of a pandemic, we'd be seeing you in Boston. Correct, Your Honor. And I'm very, very grateful that we can all be here on teleconference. I would note that- I would note that as of tomorrow, I can't even go into Massachusetts. I hear you, Your Honor. And I would say that- And that's because of COVID. Correct, Your Honor. And today is primary day in Tennessee, where I'm located. And I actually voted this morning in person at our nearby polling location. And I would say election- Good luck with that. I already did it successfully. And I'd say our local election officials in Tennessee, as in Rhode Island, total professionals, and had a good, clean, safe, sanitary system set up. And it went smoothly. And I recognize that the Secretary of State in Rhode Island also has concluded that in-person elections will occur on September 8th and November 3rd. Have you seen the standing of Rhode Island in terms of how the COVID pandemic is increasing in Rhode Island? Yes, Your Honor. It's the third in the nation. Yes, Your Honor. And I think that's something to be considered in whether granting the stay or not, don't you? Yes, Your Honor. It's not to be understated. Tennessee is in a very similar position. States that had initially low rates are now experiencing increases. And it's a serious matter. We are all trying our best to socially distance and wear masks and be safe. Well, the point is that your position would seem to me to reduce the number of people that will be able to vote rather than what should be encouraged, which is that the largest number of people vote. Your Honor, we don't believe so. We think this requires... In setting the table here a little bit. If people are afraid of this pandemic and therefore they're afraid of having two people come to their house or join with two people or an honoring and so on and so forth, rather than the alternative being having to go and vote in person, what do you think they will take? Your Honor, to set the table again, this requirement, of course, is not in constitutional and normal times and in abnormal times, such as a few weeks ago, the Supreme Court was content to put that choice on Alabama voters because COVID-19 is a big problem and a big change in our society that requires responses. But it's a burden on everyone, including the state. But we're not dealing with Alabama. We're dealing with Rhode Island, the situation in Alabama. I mean, in Rhode Island. Yes, Your Honor. And in Rhode Island, you could have a 15-person gathering at your house right now. You can go to bars, you can go to restaurants, you can go to the grocery store. There's a lot of interaction that can be had safely with social distancing and mask wearing and being sanitary and just being understanding and cautious toward each other. All that's perfectly appropriate, but Rhode Island is not on total lockdown. There are ways to interact with one notary or two other registered voters that are quite common. And you have 30 days to do so. But the advice from the governor for people our age is we should stay home. We have a whole system set up that allows food delivery to people our age. Yes, Your Honor. And the food delivery person may be a good witness. But more importantly, I understand that COVID-19 affects different populations differently and there are different risks involved. However, this consent decree enjoins the entirety of the law for everyone in Rhode Island. The few cases that have enjoined these witness requirements, Wisconsin, Alabama, South Carolina, and Virginia. The Wisconsin case did not enjoin the state, it told voters, if you can write on your ballot in some written way that you tried to be a witness and couldn't because of COVID-19, then we'll excuse the requirement. And in Alabama, the court only excused the requirement for those who are immunocompromised or I believe that included elderly or people who took care of elderly or immunocompromised people. That's the extent of the injunction that Alabama court actually denied the injunction in part that it refused to enjoin the law statewide. Both Wisconsin and Alabama were still stayed by Alabama or by appellate courts. But I think it's notable that a statewide ban is not something that the parties could lawfully obtain from a court given the nature of their challenge and given the nature of the risks of COVID-19. All right, Mr. Dorff, I think we'll stop here and you still have five minutes and we'll hear from the other parties. Thank you. Thank you. Judge? Mr. Keats, yes, yes. Yeah, that's right. Mr. Keats, that's correct. Thank you. Thank you. Good afternoon, Mr. Keats. Good afternoon, your honors. Thank you for taking the time to hear from us today. I know this is not always a part of a stay pending appeal. So we appreciate the attention you're giving to this and taking your time so quickly. So let me just start that what the parties and the court below were confronted with primarily a constitutional question. It was simply whether Rhode Islanders should be faced with the choice of risking their health or voting. Or not voting. And it was our belief that that was an unacceptable choice as a constitutional matter and as applied in these unique circumstances where we were all living through a remarkable epidemic. We did not know what the defendants would do when we brought the suit. I am actually very pleased to hear that the other side has dropped the ridiculous allegations that we somehow colluded. They absolutely below asserted that. It is just remarkable that they're just suddenly and blithely kind of withdrawing it. There was no support for it whatsoever. At the end of the day, when I think people looked at the evidence and the unrebutted evidence, the GOP when they intervened has never said they wanted to introduce any evidence to contradict a single fact that we put forward. In fact, I believe the only fact they tried to introduce was a book by Buddy Cianci, which actually talked about how witnesses tampered with voters and actually kind of undercut whatever argument they were trying to make. This is purely a legal argument on their part. It's a fallacious one. They simply say you have a facially valid statute. It can never give way. It can't give way unless the legislature acts. It can't give way unless the governor acts. The reason we have courts is because it is not a predicate to bringing such claims that any of those bodies act. And in fact, legislatures and executives to act or don't act for many complicated reasons. But at the end of the day, yes. Mr. Keats, assuming that we might not think very much of the court's reasoning about the timeliness of their motion to intervene, do you think that their motion is otherwise unmeritorious? Could you just tell us why you don't think they should either have a right or have a permissive interest in intervening? Or are you contesting that? Look, you know, we spelled it out in our briefs. I thought that I am puzzled by what their legal interest is in this case. The states involved, they represent the same interest that everybody represents in wanting to make sure that elections are conducted with integrity. I don't know what they add to that. I don't see what they were trying to bring to it. They were trying to purely make a legal argument and they were able to make it. So I don't know that it makes a difference at the end of the day. The fact is they can't just- But they say that their voters and their candidates have an interest in making sure that the election laws are carried out as drafted by the legislature with the signature of the governor. So that's what they say. That's what I understand their interest is. And why do you say that that's not a valid interest-warranting intervention? You know, I think the state- Because partly, first of all, we're doing two things. One, there's a consent decree that we agreed to. And the states can be- Look, the state's constitutional officers are charged with conducting elections fairly and appropriately and lawfully. And they're in the best position to make those decisions. I don't- Again, I don't know that it's a legally protectable interest for a party to say, hey, we want you to enforce a law that may or may not- That they conceded in the last election in June had no negative impact on them. They were specifically asked in the hearing, what injury do they claim from the June elections? And they said they don't know that. So because- But what do you make of the governor's failure to issue another executive order or the Senate's refusal to pass the legislation that was passed by the House? What are we to make of that? And does that factor into our consideration at all? I don't think it does, Your Honor, candidly. Legislature's act, executive's act, as I said, for many reasons or no reason, you can't really infer anything from it. At the end of the day, it isn't a predicate to a constitutional as applied challenge that the legislatures have to be given the opportunity to act, but it can be no challenge. That's one of the reasons we have courts and one of the reasons we have cleanings like this is legislatures don't always act the way they should. Executives don't always act the way they should. And at the end of the day, individual rights and the right to vote have to be vindicated. And it may be the end of the day that it's the courts that has happened here, the courts that effectively have to deal with it. But I've been in it for many impacts. Oh, sorry. I don't think it impacts the validity of the claim. The other side makes an argument that the precise argument you're making every time another district court has accepted it, it's been thrown out three times by the Supreme Court. How do you respond to that? I don't think it's accurate. First of all, the Supreme Court hasn't faced this issue and this set of facts in Rhode Island and the cases that you were talking about. What do you mean by that? If the Supreme Court has set aside state injunctions entered by district courts, challenging and setting aside witness requirements and other election rules and the Supreme Court, I'd understood, had on three occasions issued stays of those injunctions. They have not done so in the connection with a consent decree. And I think that is very important and very significant. What's the difference? I think the difference is the states, when you have the state government saying, hey, we disagree. We don't think the law actually has applied in violation to a constitutional violation. At the end of the day, they are vindicating and litigating on behalf of what they think is right for the state. And that impacts the balance of harms and everything else in granting an injunction here. Where the state has looked at the facts and in fact, you'll hear from counsel to the Board of Elections, I think, they conducted hearings in connection with the last election. They're the ones that are charged. Sorry. Let me interrupt you for a second. I'm sorry. It's harder on these audio visuals because you can't see. But you keep saying the state. The state, I think the official pronouncement of the state through its legislature is signed into law by the governor is that there is a witness requirement, period. And the state has never taken a position to the contrary. It seems there are officials within state government who unsuccessfully have unsuccessfully lobbied either the governor and the legislature to change that rule. And what you're now saying is that because those officials enter into a consent judgment with plaintiffs, that distinguishes this case from the others. How would you correct what I just said? You know, I think a couple of things. First of all, let me just take a step back. I think the only state we're talking about from the Supreme Court was with Alabama. I don't think there was another Supreme... I don't think the Supreme Court stayed in any of these other orders. I may be mistaken, but I don't... I think it's just Alabama. And there was more going on in that case, by the way, than just a witness requirement. So we'll just put it at that point. When, in this case, you know, when... And I really should leave it to the Secretary of State and the board to answer some of this. You know, when you are faced with... I will simply say it's obvious that as applied, you would be depriving voters of the right to vote using a ballot if they had to risk their health to get witnesses to sign. I think they are well within their rights to say, you know what? We've conducted an election before this way. We are not going to oppose and we will agree to the entry because we think there's going to be a finding that at the end of the day, we would be in violation of the law. I think that's well within their authority as the constitutionally authorized offices of the state government to make those judgments. And again, it's reviewed by a court for all the reasons we just discussed. In Rhode Island, does the Attorney General represent the state? Yeah, and Attorney... Again, I'll let the other speak to this. The Attorney General was to my... We gave notice the night we filed the complaint to the Attorney General. He received... The Attorney General received a copy of the complaint, I understand, was consulted throughout the process and actually indeed did attend the hearing. Did the Attorney General ever sign off on this? Did he sign as a party on behalf of the state or himself? Well, we didn't think and I don't believe it is the case that the Attorney General is a necessary party, but I think that they certainly had the Attorney General's approval to do what they did. And I think, again, I'll let the other speak to those points. Should I continue? It looks like I've got only about 30 seconds left. Use it if you want. Keep going if you have more to say. Yeah, look, I guess at the end of the day, I don't think this is a partisan issue. And I'm a little disappointed, frankly, that people have treated it as such. COVID-19 infects Democrats and Republicans. The notion that it is... The notion that there's some unusual population that's burdened by this, which is certainly what the Republicans are saying, is remarkable. We're all socially distancing. We're all doing this remotely. In the last election, the one thing, and I want to respond, one thing to Purcell, I think the court has got it right. The voters actually are fully aware and expecting that they're not going to have to risk their lives to do this. They also know this lawsuit's been filed and this is how they conducted the last election. 83% of the votes that were cast in the last election  And by the way, with that incident, sorry, all right. Please, go ahead. Look at 99% of the people who... 99% of the greatest generation will say that cast their votes, did so by absentee ballot. 94% of the silent generation, as we call it, cast their ballot by mail. And I think something like 88% of the generation that's the baby boomer generation did it by mail. To say that this is only a small, unique, idiosyncratic, I think was the remarkable term, population that's impacted by COVID is just absurd. And I think that the judgments that were made here by the court are well supported by the record and by the parties reflect good public policy, good legal analysis. And I would hope that the court would deny this motion to stay. Thank you. Thank you. Mr. Zaranis, you're on. Thank you, Your Honor. Good afternoon, Your Honor. Thank you for the opportunity to appear before you on behalf of the Secretary of State. I wanted to make three points today. The first is to distinguish and to explain why we're not Wisconsin, Alabama, Idaho, Minnesota, Ohio, or Arkansas. Cases that have been cited by the movements in one way or another. There are a lot of reasons why Rhode Island is not any of those states, but let me be clear about this particular case. One is we have the June election and that's not disputed. Your Honor has asked questions about the June election. It was widely successful. 83% of the voters used mail ballots. That's not disputed. Previously, it had been 4%. And while this was not, I don't know if the court can take notice of this, the turnout was much higher than it had been in prior elections. That's public records that indicate that. And so in all of the other cases that we've talked about, they didn't have a prior election like this. They didn't have an election just previously that had no witness requirement, no notary requirement, asked for personal identifiable information, which is the last four digits of the social or the driver's license number, and had been widely successful in all of them. And I think that the court already asked the question about what the harm is and the movements have a big problem articulating the harm because quite frankly, increasing the turnout like that, I have no doubt benefited the movements as well in terms of more people voting. Let me say my second point. And I think Judge Carriota actually asked this question already, but I just wanted to emphasize, and that is if you look at the Supreme Court cases that have been cited by the movement, in all of them, all of them, including Wisconsin, there's a state party, there's a legislature, the Secretary of State, the governor, there's a state party asking for relief and saying, don't change our laws in all of them. And so PURCELL really stands for the proposition that you should not, that we don't want courts to impose these regulations on states so close to an election. But again, and there's a worry about confusion, but the real issue here is we believe we've obtained a consent judgment that's good for the city, but in the state of Rhode Island, for all the voters, and that will limit any type of confusion because you just had an election in June in that manner. So I wanted to make sure that that was clear because those cases, all of them involved the state officials appealing. And as I know someone asked, but I think it was Judge Thompson who said, the Senate, neither the Senate nor the governor nor the legislature, no one has sought to intervene in this case here. Not like the Wisconsin legislature that sought to intervene previously. What about the flip side of that is what concerns me because I understand that your governor by picking up a 10 could do away with the readiness requirement for the upcoming election. The governor did do that for the primary. Yes, your honor. And I have no doubt, I'm sorry, your honor. So when the governor chooses not to do that, after having shown some sensitivity regarding the prior election and the concern, and the legislature isn't moved to do anything,  well, the state is not going to do anything. We don't want to take the political heat for making this decision. So we're just going to offload it on the federal courts. And then we can say they made us do it. You're moving from the ballot to the courtroom. And shouldn't we have some concerns about that? Well, I think- Can I add something to Judge Kayada's question? The governor- Of course. The governor, the attorney general, the president of the Senate, the secretary of state all belong to the same party. And they can pick up the phone and call the governor and say, governor, we need an executive order. So I have some of the same concerns that are flashing through my colleague's mind right now. Why hasn't that been done? Even in the context of the initiation of this legislation, say, will you do this? Because like the last election, it's important that the health of the people of Rhode Island be protected, and you have the authority to do it. If I may- I'm going to shut up and let you answer. No, Your Honor, it's hard to know when your question's done on the video. So I wanted to make sure, obviously, that the court asked the question. But if I may, I think the distinction between the two, the June primary and now, is that when the governor issued the initial executive order, the legislature was not in session for the second case. The legislature was in session. But I still don't think the fact that they haven't acted bars the relief in this case because they have the right. And it would be a very different case if the governor or the legislature moved to intervene and were bringing a claim. In fact, that's what happens often. The legislature typically intervenes. I know, I think it's INS versus Chadha, where in the federal context, the executive is not going to enforce the law. The legislature has a right to move forward and to seek to defend the law. So that's not- That's time. You may finish. Go ahead. I just wanted to add one thing, if I could. Boy, five minutes goes by fast. And that is, I wanted to point out one of the cases that they mentioned, Little versus Reclaim Idaho. And what Chief Justice Roberts wrote in that case. That case involves initiative, the voter initiative, and how to get a voter initiative on the ballot. And they issued a state regarding that. But in that case, and I'm quoting from it, he points out, the governor and secretary of state here, for example, have suspended some limits on absentee voting and process requests for absentee ballots through online channels. And he adds, the district court did not accord sufficient weight to the state's discretionary judgments about how to prioritize limited state resources across the election system as a whole. The state of Rhode Island, acting through the secretary of state, through the board of elections, and with the input of the attorney general, who not only participated and helped us with respect to the consent judgment, but was at the hearing, have made a decision. No one from the state of Rhode Island is here objecting to that decision. Not the government, not the legislature, no one. And we hope that the district court and Judge McElroy's decision to grant and enter that consent judgment will in fact be upheld. Thank you for the extra time. Is the legislature in session now? I don't believe the legislature is in session, but I could be wrong because I saw that they were having some hearings that I believe were postponed just this week because of an issue with COVID. So I apologize for not being able to give you a specific answer. I know that they adjourned, I believe on July 17th though, which is a week before this lawsuit was brought. So could you get us perhaps a 28-J letter later today giving us an answer on behalf of the state parties as to whether the governor currently has the power so that she could just sign an executive order and do away with the witness requirement mooting this whole litigation? I will work on that, Your Honor, and we'll have a response to you before the close of the day. Lord willing or the first thing tomorrow morning, but I will work on that and get a response to you as soon as possible. And I just have one more question also. I know that you are defending the consent decree. Are you also defending the judge's decision to deny intervention? Well, we are, Your Honor, and our brief on- But just give me briefly what your argument is for why that ruling was appropriate. Yes, Your Honor. We cited four cases on pages 18 through 20 of our brief from several district courts where intervention was denied because of the concern of a delay in the election process. That is our biggest concern. And one of the things, Your Honor, just to be clear, while we objected to that, we made it clear we did not object to them participating in the fairness hearing. We thought, obviously, they had a right to be heard in the fairness hearing. But our concern is really what the concern has been in other places, and that is that in these types of cases, because of elections and all of the special things that have to do with elections, you want to move and resolve these issues quickly. And their intervention has actually been denied in several cases, and we've cited those all in our papers. Can I just pin down one more thing, or at least one? Could you just confirm that the secretary has ordered, because she was on, I saw an advertisement this morning where she was encouraging voting here in Rhode Island and trying to explain the methodology for voting. Can you confirm that she has printed the ballots without the notary and without the signature requirement? Yes, Your Honor, but in full candid to the court, and it's in the affidavit we submitted below, we did have those 60,000 that the movements mentioned, and that was because we put it in our affidavit as I felt it was important to be fully candid with the court and let you know that we had 60,000 of those envelopes that had been previously ordered back last year. But in fact, the printing that's going on is without the notary, without the witnesses. Obviously, if the court issues a different order, we will do everything that we can to comply with the order, as we must. Are you able at this time, if we issued an order saying the consent decree to comply, given the direction the secretary has already taken, or do you know? We're able to comply, but ballots are going to go out later than we believe is the right time to do it. And I want to be clear, the affidavit that we submitted below was from Mr. Rock, who is a 15-year veteran, director of elections, and these are based on his historic use of these ballots. We do not wait till the end of the mail ballot application period to mail them out. I think that's probably common sense. We do not do that. So the answer is would we be able to comply yes, is it going to delay some ballots getting out? Yes. And I know that we will not be able to comply by August 10th in terms of when we were hoping to get the ballots out, because we believe that presents the best opportunity to make sure that Rhode Islanders have a chance to vote by mail. Your client is the secretary, is that correct? Yes, Your Honor. And then, as I understand it, she has favored what the district court has done for quite a while. Yes, Your Honor. All of this year, yes, Your Honor. And as her client, are you aware of any reason why the governor would have not to go along with the secretary's view other than that the governor has made, arrived at some different balance of the costs and benefits and pros and cons weighing the effect of the COVID crisis as being different for this election than it was in June? I don't know exactly how to answer that, because my understanding, and there was no evidence put on on this below, but I mean, my understanding, I believe that the decision had more to do with the legislature being in session. However, what I can do, as you requested, is to give you a 20, I think, J letter this evening as soon as possible to respond to that. So I want to be candid with the court relative to that. I don't know what exactly the governor's conclusion came, what conclusion she came to, but I have spoken to legal counsel in the past. So I take it we can presume if the legislature has been out of session and the governor has done nothing to change the status quo, then it seems to me we can assume that the governor has determined that all things considered, she should not make it easier for people to vote by absentee ballot by getting rid of these witness requirements. I would not assume that, Your Honor. I think that after I have a chance to submit the letter and get that information, I think it would be, I think at that point, maybe you can draw some inference from that, but I would not assume that at this point. All right. Thank you. I've got a question based upon that series. So if, per chance, and this is pure speculation, if the governor changes her mind, assuming the General Assembly is out of session and issues an executive order, does that moot this litigation? Or do you think about it? No, I would think that it mooted the litigation, but I'm fairly confident, and since we're speculating, we're not going to speculate, that there will be another challenge by movement to that. But I would think it would moot this litigation. And certainly, I can tell you that as soon as this conference is over, I will be seeking to speak with legal counsel to address some of the issues that the court has raised in this case. Thank you. One more thing. One more thing. I mean, one of the factors that Purcell talks about is voter confusion. So you make the argument that because Rhode Islanders voted like this in the June primary, and this is also the logic of the district court, it would be more confusing to now go back and change it in the middle of the pandemic, because this has become the way in Rhode Island we do pandemic voting. Because the Secretary has been advertising and sending out voter information, postcards, and voter information on the website, which portrays the process as what you're here defending, should that confusion play any part in our thinking? Well, I think the confusion, if I could, and it's not just that they voted like this previously in June, it's that they voted in record numbers like this previously in June. And that's really not disputed. In fact, I believe the movement teams even cite in their papers the 83% number of people who voted by mail ballot. So that's not disputed. So we're now about to go to September, and we believe that given the record number of people who voted by mail without this requirement in a pandemic, we should not change it now. And I want to add one thing, if I could, relative to your question, and that is that the suggestion by my brother, the movement's attorney, Mr. Norris, that we, perhaps the court, look at November differently than September, we would ask you, please do not do that. We're very simple, and if you want to talk about confusion, have an election one way in June, the same way in September, and then change it for November. So we're very concerned about that, and just wanted to make that clear. And then I appreciate the court's indulgence in the questions. I'm happy to answer any other questions that you have. Thank you. Thank you. Judge Thompson, thank you. Judge Thompson, can you take over for a minute? Sure. We can take a little recess. Can we take a little recess, Dan? Yes, we're going to pause the stream for a minute, please, I.T., and then we would like to hear from Attorney Marcaccio at this time. Mr. Marcaccio? Mr. Marcaccio, can you hear me? Yes, I can hear you. Great. Good afternoon. Pleased to see you. Thank you, Your Honors. It's a pleasure to be before you. I think that I'll let my brief speak for itself with respect to the board's general role in the elections process, but I think that is critical to your decision here, and that is that the board does have plenary powers with respect to elections matters and can, in my judgment, along with the Secretary of State, enter into a consent decree on behalf of the state with respect to anything that impacts the election process. But with respect to the mail ballot process, I think that is of most importance because the question that has been raised here is one of harm, and that is an increased chance of fraud. And if the court looks at 17-2026, subsection C of the general laws, you will see the general protocol by which the board goes about the process of comparing signatures. And in the judgment of the board, and I believe of the Secretary of State, that is the critical way that we protect the franchise from fraud. It is not, for example, determining whether or not a notary has a valid commission. It is certainly not by analyzing the two witness signatures. We have really no control over those. Bear in mind that people who make this request may be in Rhode Island. They may be in Minnesota on business. They may be using a witness from Minnesota. So we can't do an analysis of those two signatures. But admittedly, both the signatures and the notary are there as part of this process. But the focus, as I said on section 2026 of Title 17, is for the board to hold a series of publicly noticed meetings at which the candidate, the candidate's representative, members of the public, and the media can observe how the board's agents compare the signature that's set forth on the certification envelope with the signature that is on the application. And if there is a comparison and found to be a sufficient comparison, then it would be eligible to be tabulated. If it is not, if the agents who review it, the board staff, and determine that there is a discrepancy in that signature, the process continues as we have a regulation that has been in place since 2018 to allow for the voter to be contacted and informed of the discrepancy. And Mr. Macaccio, previously, in-person voting was verified the same way. You showed up at the voting booth. You had to write out the information. They have these little slips. They look to see if it matches what they have on file at the time you register. But the General Assembly changed that, and the governor signed it, requiring voter identification. Why isn't the requirements of witnesses or notary similar to the requirements now for voting in person? Well, Your Honor, because the General Assembly, when it passed that law, did not modify Chapter 20. That is the best evidence we have of the legislative intent. Because I know there's been a lot of talk about what the board, what the General Assembly has not done, but we don't have the benefits of a legislative history on what's transpired over the last several months with the General Assembly. But they didn't, they didn't modify that section, but they passed laws to enhance protections against voter fraud, supposed voter fraud, which it seems to me that these additional witnessing requirements similarly protect. Or, Your Honor, the General Assembly determined that the protocol that is actually followed with respect to 17-2026 is sufficient. The signature comparison, because, Your Honor, if I could, on that signature comparison, because that is key on the issue of fraud. Remember, that is on the, that is the ultimate step in this verification process. At the initial step, there are other sets of eyes that go through a similar analysis on signature comparison with different signature specimens for the same voter. So by that, I mean, when you initially make the application for the mail ballot, that is at the local level, that is under 17-2010. And it is the local board that compares the signature of the voter on record with the signature that is on the application and makes that comparison there. We have it at the beginning end with a different set of eyes, a different part of the government structure making that review. And then at the ultimate point when it comes in, a different signature is reviewed, this one on the certification envelope with the application. So, Your Honor, I think that, respectfully, in my judgment, the General Assembly knows what we do with respect to the mail ballot process. And that is the focus in 17-2026. The analysis under 26 is on signature comparison. There isn't anything under 26 that speaks to determining the expiration date of the commission. Now, please finish. And so that is, I think, Your Honor, that is important as to how it is determined. It does go to the fraud. And if I could, with perhaps 30 seconds, note one thing, because this has come up, and that is on confusion, and all the judges seem to be concerned with that. The board very well may have taken a different position if we had a circumstance where the lower court found that the pandemic causes a constitutional barrier and then fashioned its own remedy. That's not the case here. The case here is after the board took the vote based upon the evidence it developed. It agreed to a consent order that went to the lower court. And I think that also is a matter of important distinction. Thank you. Any other questions? Thank you, counsel. Thank you, Your Honor. I believe there is rebuttal. Would attorney Norris, thank you. Yes. Your Honor, I would just ask at the outset, as the appellants and movements, if we could preserve our traditional ability to go last in this argument. I think we've already decided to the contrary. I'll take Your Honor's decision that I understood that as giving him more time not necessarily the very last speaking slot. Well, you did get a lot of time when you first argued, so I don't think you should complain too much about the time. Understood. Just a few points then, Your Honors. One point I didn't get to, but it's mentioned in our brief. We also asked the district court for intervention for purposes of appeal, which is something that you're allowed to grant. I've never heard any of the parties object to that form of intervention. That is also an option on the table for the court. She denied that? She did. You can see that in the transcripts, but not the opinion. Rounding back out to where we started about what our interests are here, I've mentioned them before. Preventing confusion of our voters, saving our resources, preserving the integrity of the election, avoiding changes. How does it avoid confusion when the Secretary of State has already started sending out literature as to the procedure for voting in Rhode Island that doesn't match the arguments that you're making? I'm not sure any party has cited that literature or what it is, but... I got it in the mail. Fair enough. And the Secretary was on TV today explaining how to do mail ballot voting. Fair enough, Your Honors. I would say it's slightly perverse that states could negotiate or parties can negotiate consent decrees on the last day and then say, no challenge to the consent decree for the last day. I don't think the Purcell type concerns work in reverse. If you look at the Supreme Court's opinion in the Wisconsin case, RNC versus DNC, they go through this analysis. And I want to say... One of the ways the Supreme Court chastised the appellate court in Purcell is that it said the Court of Appeals didn't give enough deference to the district court's discretion. And so why wouldn't we take a look and give the deference to the Superior Court's judgment, as you said, in the same fashion that Purcell says we should? Your Honor, Purcell is a principle that kicks in when a court suspends state law. That's what the district court did in the most recent round of Supreme Court stays. The notion of the deference we give to the district court, Purcell was talking about the findings that were made by the state court judge. The court didn't say we give deference to some findings and not deference to other findings. It happened to be in the context of the district court's judgment. But it still, in general, is talking about deference to district court findings by the Court of Appeals. Understood, Your Honor. And Purcell is not the last Purcell case. The Supreme Court has issued stays in many, many, many election cases since then. That's the one you keep talking about. Yes. And in all those cases, the district court entered the injunction of the election law and deference aside, it got this decision stayed in the end. And I'll say that one of the best opinions to illustrate this point, my friends all agree that Rhode Island and Alabama are sort of the two states with this exact same law, the two witnesses or notary requirement. And of course, the Supreme Court entered the stay in the Alabama case. And if you read the 11th Circuit's opinion in that People First of Alabama case, you will see, I think, basically, an opinion that lines up exactly with the briefs that the parties have submitted here, the plaintiff's position on this, all the way down the line, including on Purcell and how this won't be disruptive and how COVID-19 has changed everything. That opinion matches their theory exactly. That opinion was stayed by the Supreme Court and the Supreme Court disagreed with it. And then a few days ago, in the Reclaim Idaho case, the Supreme Court 7-2 stayed an injunction of an in-person signature requirement that applied to the petitioning process in Idaho. Seven justices voted for the stay. Four justices wrote to explain why. And they said, in an opinion by the Chief Justice, that witness requirements, even during COVID-19, remain minimally burdensome, requirements that can be complied with, with reasonable effort. And the state's interest in preventing fraud and ensuring that the person voting is that person, which is a higher risk of absentee voting, those interests are still sufficient. I think the Supreme Court's guidance in these fast-moving cases really couldn't be clearer, and it's been fairly consistent. Explain something to me. You may have already covered it, but I just don't understand this allegation of fraud. What is it based... What factual basis is it based on? Two points, Your Honor. One, legal, which is, if you read the Crawford opinion from the Supreme Court and the voter... Well, excuse me. In this case, I would like to know what evidence you have of the possibility of... the probability, I should say, of fraud, considering the experience that has been had in recent times with this same system. Your Honor, I wouldn't put too much stock in the experience from June. I can see why you don't want to mention it, but I mean, it does have some relevance, I would think. I think barely, Your Honor. Did Alabama have a prior experience, voting experience, without signatures, without witness signatures? I can't say, Your Honor. I'm sure there have been other states that had elections without a witness requirement and then with, but I don't have that data available. I'll just say the incentives for fraud are fairly low in uncontested elections, so I don't think June is very relevant. The general election is, in November especially, is where this concern would rise. And despite... What's the evidence of that? What is the evidence that fraud actually occurs in general elections, including presidential elections? The president put together a panel and they concluded just the opposite. Your Honor, not our burden to show that, but let me get to the factual question, because I think that's what we're... Well, you're the one who keeps pressing the notion of harm. Yes, Your Honor, and part of the... And you're saying voter fraud. Our only, our harm is not exclusively voter fraud. We have... Exclusively doesn't mean that it is not in part voter fraud. Correct. And if I can, I'd like to discuss the sort of the factual and the legal support for that. Legally speaking, there needs to be no documented evidence of fraud to have prophylactic anti-fraud measures. Rhode Island, luckily, may not experience much fraud because it's had these protections on the books for so many years. Go ahead. I still would like to answer my question. Right. So the Sixth Circuit in the Thompson case, the Eighth Circuit in the Thurston case, the Seventh Circuit in the DNC case, all said witness requirements, the reason they exist is to prevent absentee voter fraud. The Supreme Court, in the Crawford opinion, said absentee voter fraud is absolutely real and is a problem in the United States. That's Justice Stevens who said that in the Crawford opinion. And the reasoning is that when you are not at the polling place, no one is watching you cast your ballot. There's no way to verify directly who is signing that absentee ballot. And now the witness requirement is the only thing in Rhode Island that has a third party come in and verify that the person voting is, in fact, that person. And now that requirement is gone. I understand that Rhode Island has other requirements, but contrary to the Board of Elections, the legislature did not pass a witness requirement for no reason. They did it, as other legislatures have done across the country, to prevent fraud. And that risk increases without this requirement, as does the risk of voter confusion in our interests. And I would just ask, when we're considering our injury here, we need to be careful not to confuse the merits of the case with whether we have standing to make these arguments. I do believe those are separate inquiries, and we've made our challenges under Purcell and under merits, but those don't quite implicate our standing to come here in the first place. Thank you. I just have one more question. Do you agree that if the governor issues an executive order that this legislation is moved, this particular legislation, I'm sure you'll probably be back in the litigation? The litigation. Your Honor, if the governor suspends the witness requirement in exactly the way that she did in June, this litigation is moved, and the consent decree should be vacated. Thank you. Thank you. Thank you, Mr. Norris. I think we were going to hear two minutes from Mr. Keats. Yes. And thank you for the court's indulgence. So let me just say, look, we represent nonpartisan parties, common cause, League of Women Voters. I understand the court would prefer if the governor would resolve this issue. Questions of public health, unfortunately, in this weird time have been reduced to political calculation. The great thing about courts and the Constitution is they cannot be. And our claims exist today independently of what the executive branch chooses to do. You already have the Secretary of State and the Board of Elections who, in the face of the evidence, and the actual parties who were charged with running elections have agreed to it. I would candidly say, I don't know that it would add much more. If the governor does something, we will be right back here. And given the timeliness of the election, I would just urge the court that while we can find an answer and see what the governor says, I am very worried about the timing and that coming back to haunt us, frankly, because it may just give the other side, the interveners, more opportunity to claim that there's somehow going to be voter confusion. I think our case was well made. I think it's clear the court would have entered a TRO and a preliminary injunction. And she didn't have to find that to exercise her discretion appropriately. She clearly did not abuse her discretion. There's just no argument. And by the way, the Idaho case did not involve voting rights. The Supreme Court went out of its way to say it was not about the right to vote. And I'm sorry the opinion can be searched in complete vain for anything that says witness requirements aren't burdensome. It talks about signatures. It does not talk about witness requirements. So I'm a little, I wanted to clear what that case is about and what it is not. It's not about the right to vote. This very much is about voting rights. So that is a distinguishable case. So I apologize for a little bit. I'm getting a little heated, but we feel very strongly about this. Democrats and Republicans can debate this all they want. At the end of the day, these are about our rights and our voters' rights not to be burdened unnecessarily or unconstitutionally. Thank you. Mr. Keith, you don't have to agree that it's moot. Can you think of an argument, though, as to why it wouldn't be moot? You know, it's an interesting question. I don't know. I'd have to think about it. You know, frankly, I can talk to our Secretary of Council in connection with the 20HA letter. I haven't really thought it through. All I know is the GOP is plainly going to just challenge it again. It may be moot for this moment, but it may be moot for about 30 seconds. Thank you. Thank you. Thank you, counsel, for appearing before us. We appreciate your arguments, and we will try to come up as soon as possible with a just and legal opinion. Thank you. Thank you, judges. Thank you, Mr. Patterson. Thank you, your honor. Thank you. Thank you. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable counsel. You may disconnect from the meeting.